DAVID W. BROWN, Calif. SBN 99389
Attorney at Law
665 Munras Ave., Suite 210
Monterey, CA 93940
Tel: (831) 649-8211
Fax: (831) 649-2376
Email: DavidWayneBrown@aol.com

Attorney for Plaintiffs
JASON J. ADAMSKI and
CHERYL A. ADAMSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF THE STATE OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JASON J. ADAMSKI, CHERYL A. ADAMSKI, <br><br> Plaintiffs, <br><br> -vs- <br><br> PAMELA A. MARTIS, in her capacity as garrison commander, Presidio of Monterey, United States Army, <br><br> Defendant. | No. _____ <br><br> PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ISSUANCE OF TEMPORARY RESTRAINING ORDER |

### Statement of the Case

This is an action against the garrison commander of the Presidio of Monterey, including the Ord Military Community / Presidio of Monterey Annex, for declaratory and injunctive relief as to a "bar letter" issued by defendant against plaintiff JASON J. ADAMSKI, which has the effect of barring him from his home.

### Introduction and Statement of Facts

On March 1, 2007, plaintiffs JASON J. ADAMSKI and CHERYL A. ADAMSKI entered into a written one-year lease for rental of a single-family home within the boundaries of the Presidio of Monterey Annex and/or Ord Military Community. The lease

was entered into with an entity known as The Parks at Monterey Bay, a partnership among entities known as Clark Realty and Pinnacle Realty, the United States Army, and the United States Navy, pursuant to law and regulations appurtenant to the Military Housing Privatization Initiative Act of 1996, 10 U.S.C. Sections 2871 through 2885. Although the housing is intended primarily for members of the military and their families, it is also open, for now, to civilian residents. Plaintiffs are civilians to whom the property was rented. These premises sit on the former Fort Ord in Monterey County. Much of that former Army base has been conveyed to surrounding municipalities and other entities. However, the Army retains a portion, known as Ord Military Community and/or the Presidio of Monterey Annex. The area is accessible from roads which are now under civilian municipal ownership and control, and there are no guards, fences, or other clear barriers which separate it from the surrounding civilian communities of Seaside and unincorporated Monterey County. It is policed primarily by civilian federal police officers, not by military police.

Plaintiffs seek a temporary restraining order preventing defendant PAMELA L. MARTIS, the garrison commander, from enforcing a "bar letter" by which she ordered plaintiff JASON J. ADAMSKI off the enclave, and thus out of the home he rented and shared with his wife, plaintiff CHERYL A. ADAMSKI. The bar letter was sent by defendant on the basis that Mr. Adamski is a registered sex offender. He was convicted, in Ohio, in 1999, of an offense which requires him to register, pursuant to California law, as a sex offender with the local authorities. Mr. ADAMSKI complied with this law, and is, to date, in compliance with it. Now, if he does not move out of his home, away from his wife and newborn child, he will face repeated criminal prosecution under 18 U.S.C. Section 1382 for trespass.

## Questions Presented

The primary question presented at this point is whether a garrison commander of a military enclave, in which is located rental housing offered to military personnel and civilians alike, and which enclave is not separated from the surrounding civilian communities by fences, guards, or even any visible boundaries, violates a civilian

residential tenant's Fifth Amendment rights to procedural and substantive due process by issuing a "bar letter" which results in his eviction if enforced.

### Argument

### I. DEFENDANT'S "BAR LETTER" ORDERING PLAINTIFF JASON J. ADAMSKI TO MOVE FROM HIS HOME IS INVALID AS VIOLATIVE OF THE FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW.

There is no case law of which plaintiffs' counsel is aware, which completely addresses the situation here. Federal case law which addresses the right of the garrison commander to exclude, from a military enclave normally open to civilian use and traffic, deals primarily with the First Amendment rights of civilians who wish to distribute protest literature, or engage in other forms of peaceful protest, on portions of military bases open to the public. The seminal case in this area is *Flowers v. United States*, 407 US 97, 92 S.Ct. 1842, 32 L.Ed2d. 653 (1972), in which the United States Supreme Court held that where a portion of a military base is open to the public and has facilities on base that the public can use, the base commander violates the First Amendment rights of leafleters and other peaceful protesters by barring them from the base. This is because, where the base is open in this way, the commander is said to have abandoned the right to this kind of control. See also *United States versus Gourley* (10th Circ., 1973) 502 F.2d 785 (peaceful protest at portions of Air Force Academy open to public), *United States versus Floyd*, (10th Circ., 1973) 477 F.2d 217, cert. Den., 414 U.S. 1044, cert. denied, 94 S.Ct. 550, 38 L.Ed.2d 336. In *CCCO-Western Region v. Fellows*, (U.S.D.C., N.D. Cal., 1972) 359 F.Supp. 644, 647-648, this Court, by the Hon. Robert Peckham, held that as to a portion of the former military base known as the Presidio of San Francisco, which portion was open to civilian use and traffic, the Court had federal-question Jurisdiction, under the First Amendment, to issue declaratory and injunctive relief as to a bar letter barring a Vietnam War protester from that portion of the base. The Court in that case noted that there were no guards, fences, or other barriers between the civilian roads in San Francisco and the roads on the post, so that in some respects, the base was open in this regard.

The holdings of the above cases are that military base commanders cannot violate the First Amendment rights of individuals to peacefully protest on portions of military

3

bases that are open to the public. Put another way, base commanders may not enforce letters violating the constitutional rights of civilians on portions of military bases or enclaves which are open to the public.

Here, plaintiffs are not protesters. They are not intent on asserting their First Amendment rights. They do, however, assert their Fifth Amendment rights against having their leasehold and right to occupy their home taken away, without notice and opportunity for hearing (and without compensation) by the United States Army and federal police without a prior hearing. They are civilian residents who have a one-year lease in a single-family home, in housing that is operated by a private company, and which is open for rental by military personnel and civilian residents. Here, the applicable military enclave on which the rented property sits is not only "open" in the sense that there are no barriers to civilian traffic entering the enclave, but it is also "open" in that housing on such military base is rented to civilians, such as the plaintiffs here. Given this fact situation, a potentially broader question arises.

That a base commander of an open base on which civilian housing is located seeks to use a "bar letter" to evict a civilian tenant renting such housing raises a more fundamental question than one relating to registered sex offenders. What happens if a civilian tenant of such housing, located on a military enclave, stops paying rent to The Parks at Monterey Bay, or other civilian landlord, as permitted by California law in the event of a claimed breach of warranty of habitability? (See *Green v. Superior Court*, 10 Cal.3d 616 (1974) and California Civil Code sections 1942 - 1942.4.) Does the landlord ask the base commander to send a bar letter to the tenant, with the base commander then having the tenant arrested by federal police and prosecuted in federal court under 18 U.S.C. Section 1382 if he or she fails to vacate? Or is the tenant entitled to notice and opportunity to be heard by a court of competent jurisdiction before being evicted? It would seem that a civilian tenant renting from a civilian landlord on an open military enclave does not forfeit his Fifth Amendment right to due process of law simply because the housing is located on an open military enclave. Defendant will no doubt assert that *Flowers* and its progeny apply only to First Amendment cases, not Fifth Amendment cases. But if so, they are asserting, then, that evictions of civilian tenants who rent from civilian-entity landlords on open military bases

4

may be lawfully evicted by issuance of a bar letter from the commandant.

Plaintiffs, of course, are not antiwar protesters. Neither are they tenants who decline to pay their rent on account of any breach by their landlord. Plaintiff Mr. ADAMSKI, however, is a registered sex offender. Here, exercise of the First Amendment is not involved. The Fifth Amendment Due Process Clause, however, is involved, in that here, issuance of the "bar letter" has the effect of evicting plaintiff Mr. ADAMSKI from his home, and deprives him of the benefits of the one year lease he has. It also separates him from his wife, and his newborn child, who was born only a week ago, all without any semblance of due process. Although it has been held that due process does not normally require a base commander to afford a hearing before issuing a bar letter (*United States v. Albertini*, 9th Circ., 1986, 783 F.2d 1484), the situation is very different where it is a property interest that is taken away. A person who wishes to enter a military base, to protest, or simply to visit, normally has no protected property interest in doing so. A civilian residential tenant on such a base, however, especially one with a one-year lease in housing which is his home, does have such an interest.

Defendant may respond that in plaintiffs' rental application, they did not disclose, though requested, any felony convictions. (Plaintiffs would reply that they did not think that they had to disclose a conviction more than seven years old.) However, the Court should not entertain defendant's anticipated request to consider merits such as these, in this action, because that would allow a procedure which is fatally flawed – eviction first, followed by a hearing on the merits later, in a lawsuit that had to be initiated by the person evicted. In *Fuentes v. Shevin*, 407 US 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, rehearing denied 409 US 902, 93 S.Ct. 177, 34 L.Ed.2d 165, the United States Supreme Court invalidated a Pennsylvania law on due-process grounds, where the law allowed a secured creditor, asserting a default by a borrower, to obtain the security, via writ available from a prothonotary; the person whose property was seized could only contest the procedure by initiating his/her own lawsuit so that the merits could be heard. That procedure did not satisfy due process, the Court held, as what was required was notice and an opportunity for a hearing before seizure of personal property. In *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), the Court cited *Fuentes* in holding that the same applied

for a prejudgment seizure of real property. What can be learned from these two cases is that any eviction procedure by which a person can be ordered out of his home without any hearing, and the merits heard in a contested proceeding which has to be initiated by such evicted person, does not satisfy the requirements of due process under the Fifth Amendment. The proper forum for any eviction proceeding against the plaintiffs in this action, based on the nondisclosure in their rental application, is in state court, with notice and an opportunity to be heard. In the meantime, this Court should enjoin the unlawful eviction attempted by defendant – who as a military officer should be sued in this Court.

## II. DEFENDANT'S ACTION IS ALSO UNLAWFUL UNDER CALIFORNIA LAW.

California Penal Code section 290.46 provides for what is commonly referred to as a "Megan's Law" Internet database of the location of registered sex offenders. This statute has provisions against misuse for the purpose of denying housing to a registered sex offender, stating
in pertinent part:

> (l) (1) A person is authorized to use information disclosed pursuant to this section only to protect a person at risk.
> (2) Except as authorized under paragraph (1) or any other provision of law, use of any information that is disclosed pursuant to this section for purposes relating to any of the following is prohibited:
> * * * *
> (G) Housing or accommodations.
> * * * *
> (4) (A) Any use of information disclosed pursuant to this section for purposes other than those provided by paragraph (1) or in violation of paragraph (2) shall make the user liable for the actual damages, and any amount that may be determined by a jury or a court sitting without a jury, not exceeding three times the amount of actual damage, and not less than two hundred fifty dollars ($250), and attorney's fees, exemplary damages, or a civil penalty not exceeding twenty-five thousand dollars ($25,000).
> (B) Whenever there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of misuse of the information available via an Internet Web site established pursuant to this section in violation of paragraph (2), the Attorney General, any district attorney, or city attorney, or any person aggrieved by the misuse is authorized to bring a civil action in the appropriate court requesting preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or group of persons responsible for the pattern or practice of misuse. The foregoing remedies shall be

> independent of any other remedies or procedures that may be available to an aggrieved party under other provisions of law, including Part 2 (commencing with Section 43) of Division 1 of the Civil Code.

As set forth in the complaint herein, and declarations, the information that plaintiff Mr. ADAMSKI was a registered sex offender came to the attention of someone who used the Megan's Law database, and eventually this information was passed on to defendant, whose letter purports to evict plaintiff Mr. ADAMSKI based solely on his status as a registered sex offender. The bar letter is detailed enough to imply that defendant MARTIS, regardless of the lack of any assertions of specific misconduct, has a policy of excluding registered sex offenders from the civilian housing, thus violating this statute – which provides for injunctive relief, damages, and attorney's fees. Such a state law may very well apply to a federal officer such as defendant, given that the Army, through its role in the partnership known as The Parks at Monterey Bay, is now in the business of renting to civilians. The full answer to that question can be left for another day, however. Nevertheless, if it does apply to defendant, it seems probable that she has violated it.

### III. INJUNCTIVE RELIEF IS APPROPRIATE.

As shown in part I above, even where the situation is not as dire as a person being evicted from his or her home, a federal court may properly issue injunctive relief against enforcement of the terms of a base commander's order that a civilian not enter a military base, where the base is open and constitutional rights are violated by the order's enforcement. *CCCO-Western Region v. Fellows, supra*, 359 F.Supp. 644. In this case, the balance of hardships favor plaintiffs, in that there is no assertion that Mr. ADAMSKI committed any kind of misconduct of a sexual nature since his 1999 conviction, no assertion that he has disturbed other residents in any way, he faces separation from his wife if she stays in the premises, and if she moves out with him, she has abandoned the property and thus breached the lease. In this case, the status quo should be preserved by issuance of a

1 | temporary restraining order.

2

3 | DATED: June 21, 2007

Respectfully submitted,

_____
DAVID W. BROWN
Attorney for Plaintiffs
JASON J. ADAMSKI and
CHERYL A. ADAMSKI