SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
JAMES A. SCHARF (CSBN 152171)
Assistant United States Attorney

   150 Almaden Blvd., Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5044
   FAX: (408) 535-5081
   James.Scharf@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JASON J. ADAMSKI,, CHERYL A. ADAMSKI,       ) <br>             ) <br> Plaintiffs,        ) <br>             ) <br> v.            ) <br>             ) <br> PAMELA A. MARTIS, in her capacity as  ) <br> Garrison Commander, Presidio of Monterey,) <br> United States Army,      ) <br>            <br> Defendant. | Case No.  5:07-cv-03307-RMW <br><br> DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S REQUEST FOR TRO <br><br><br> Date: July 6, 2007 <br> Time: 9:00 a.m. <br> Place: Courtroom #6 <br> Judge: Hon. Ronald M. Whyte |

## I.  INTRODUCTION

     The question before this Court is whether the commanding officer of a military

installation maintains the discretion to bar a civilian tenant from the installation, where that

tenant is a registered sex offender, and concealed that criminal conviction on the lease

application.  As will be shown below, the law governing this issue is clear, and the answer is,

"Yes."

     This case arises from action taken by the defendant, commander of a military installation,

to bar one of the plaintiffs, a civilian, from the installation.  The plaintiff leased a residence from

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

a commercial entity within the Presidio at Monterey and failed to disclose that he is a convicted sex offender.  Upon the discovery of this concealed information, the commander of the installation took action within her well recognized power and barred the plaintiff from the installation.  The plaintiffs now seek to enjoin the commander and the Army from exercising her authority to control access to the installation.

## II.  STATEMENT OF FACTS

Plaintiff Jason Adamski applied for housing at the "The Parks at Monterey Bay," a privately managed property located on the Presidio of Monterey Base Complex, on February 17, 2007.  The second page of the application contained a portion styled "Qualifying Questions." The second question reads, "Have you or your secondary applicant ever been convicted of a crime?  If yes, list state."  The box indicating a negative response to this question is checked and the application is signed by the plaintiff.  Von Ness Declaration, Attachment 1.  The plaintiff and the private company entered into a one year lease.  Von Ness Declaration, Attachment 2.  A short time after the plaintiffs took residence on the installation, another resident discovered through publicly available information that Mr. Adamski  was convicted in 1999 of a felony sex offense against a child in Ohio.  Von Ness Declaration, Exhibit 4.  The residents of the installation brought this fact to the attention of the Garrison Commander.  Von Ness Declaration, paragraph 3.

Colonel (COL) Pamela L. Martis, the Garrison Commander of the Presidio of Monterey and Ord Military Community, barred Mr. Jason J. Adamski, a civilian resident living on base, from the Presidio of Monterey Base Complex effective June 21, 2007.  Von Ness Declaration, Exhibit 3.  In the letter of notice barring Mr. Adamski from the installation, the Commander cited Mr. Adamski's "residence in a military housing community as a registered sex offender affect[ing] the good order and discipline of the military community" which the commander is

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

responsible for maintaining.  Additionally, the Commander recognized Mr. Adamski's active concealment of his previous conviction on his rental application.  The Garrison Commander "must consider the entire community's welfare, well-being, and security," and Mr. Adamski's presence affected the well-being of other residents in the military housing community who have expressed concern.

Mr. Adamski was given notice that he "will not reenter or be found within the limits of the . . . base complex at any time unless federal judicial authorities or law enforcement personnel request . . . [his] presence."  Mr. Adamski was further informed that if he violates this notice, he will be "subject to apprehension and detention by the Presidio of Monterey Police Department for prompt delivery" and will be subject to prosecution for violating United States Code Title 18, Section 1382.

Plaintiffs, through counsel, have filed a complaint requesting injunctive relief and monetary damages.  For the reasons that follow, plaintiffs' request for a TRO should be denied.

## III.  ARGUMENT

Plaintiffs are not entitled to a temporary restraining order or preliminary injunction because they have failed to demonstrate a likelihood of success on the merits and have not demonstrated the possibility of irreparable harm.

### A.  Legal Standards

The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties. As the Ninth Circuit recently reiterated,

> [t]his circuit has recognized two different sets of criteria for preliminary injunctive relief. Under the traditional test, a plaintiff must show: (1) a  strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum.

Taylor v. Westly, 2007 U.S. App. LEXIS 12528, at 6-7 (9th Cir. May 31, 2007). Plaintiffs'

claims fail under either test.

### B. Plaintiffs Cannot Show A Likelihood of Success on the Merits.

1. THE COMMANDING OFFICER OF A MILITARY INSTALLATION HAS WIDE DISCRETION AS TO WHOM SHE WILL EXCLUDE FROM BASE IN THE "INTEREST OF GOOD ORDER AND MILITARY DISCIPLINE," SO LONG AS THE DECISION WAS NOT "PATENTLY ARBITRARY OR DISCRIMINATORY."

Case law is clear on a Commanding Officer's authority and discretion to bar or deny

civilian access to the military installation under its command. Cafeteria and Restaurant Workers

Union v. McElroy is the leading case on this issue. 367 U.S. 886 (1961), overruled on other

grounds by Bd. of Regents v. Roth, 408 U.S. 564 (1972). The Supreme Court held that action of

a commander of a military installation in summarily denying a civilian employee of a private

contractor access to the installation without giving her a hearing did not violate the due process

clause of the Fifth Amendment.

It is well settled that a Post Commander can, in his discretion, exclude . . . private persons [all others than those belonging to his post] and property therefrom . . . from post or reservation grounds . . . or admit them under such restrictions as he may prescribe in the interest of good order and military discipline.

Id. at 893. Colonel Martis exercised her wide discretion when excluding Mr. Adamski from post

"in the interest of good order and military discipline."

Plaintiffs argue that the "[t]he seminal case in this area is Flowers v. United States, 407

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

U.S. 197, 92 S.Ct. 1842,32 L.Ed2d. 653 (1972)." In <u>Flowers</u>, the Supreme Court held that a commander could not prevent distributors of leaflets from exercising their free speech rights on New Braunfels Avenue, a public street that happened to cross Fort Sam Houston. Plaintiffs fail to address the significant limitations placed on the <u>Flower</u> decision by the Supreme Court's subsequent decision in <u>U.S. v. Albertini</u>, 472 U.S. 675 (1985).

In <u>Albertini</u>, the Supreme Court stated that there is "no generalized constitutional right to make political speeches or distribute leaflets, on military bases, even if they are generally open to the public. <u>Greer [v. Spock]</u> clarified that the significance of the per curiam opinion in <u>Flowers</u> is limited by the unusual facts underlying the earlier decision." <u>Id</u>. at 686 (internal citations omitted). The <u>Flowers</u> decision is a First Amendment case concerning a traditional "open forum" and in no way limits the "historically unquestioned power of a commanding officer summarily to exclude civilians from the area of [her] command." <u>Cafeteria & Restaurant Workers</u> at 892.

Plaintiffs on-post housing does not alter the analysis. In an analogous situation, the Fourth Circuit upheld an installation commander's right to exclude a dependant of a service-member living in government housing in <u>Berry v. Bean</u>, 796 F.2d 713 (4th Cir. 1986). The court noted the Supreme Court's description of the commander's authority quoted above and held that [t]his authority is not diminished "even though the civilian . . . otherwise entitled to base privileges is a dependent of a serviceman." <u>Id</u>. (citing <u>Tokar v. Hearne</u>, 699 F.2d 753, 756 (5th Cir.), cert. denied, 464 U.S. 844, 78 L. Ed. 2d 137, 104 S. Ct. 146 (1983)). The court went on to hold, "Because the merits of this issue are so well settled against the plaintiffs, they are not entitled to a preliminary injunction. The law compels us to hold not only that the injunction

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

1

should be dissolved, but also that the matter should be dismissed."

2

Id. at 714.

3

       2.  THE CONSTITUTION DOES NOT REQUIRE NOTICE OR A HEARING
          PRIOR TO A BASE COMMANDER'S REASONABLE AND

4

          NONDISCRIMINATORY DECISION TO BAR CIVILIANS FROM HER

5

          BASE.

6

7

     Plaintiffs allege that the Bar Letter issued by COL Martis violated their Fifth Amendment

8

Right to Due Process.  However, Supreme Court and Ninth Circuit precedent makes clear that

9

neither a hearing nor notice are required for a Commander to bar an individual from a military

10

installation under his or her control.  The Supreme Court, in Cafeteria & Restaurant Workers,

11

stated:

12

13

     As these and other cases make clear, consideration of what procedures due
     process may require under any given set of circumstances must begin with a

14

     determination of the precise nature of the government function involved as well
     as of the private interest that has been affected by governmental action.  Where it

15

     has been possible to characterize that private interest (perhaps in
     oversimplification) as a mere privilege subject to the Executive's plenary power,

16

     it has traditionally been held that notice and hearing are not constitutionally

17

     required.

18

367 U.S. at 895.

19

     Applying this decision on remand in the Albertini case, the Ninth Circuit rejected an

20

argument similar to Plaintiffs' that a hearing was required prior to the issuance of a bar letter.

21

U.S. v. Albertini, 783 F.2d 1484, 1487 (9th Cir. 1986), overruled, in part, on other grounds by

22

23

U.S. v. Qualls, 172 F.3d 1136 (9th Cir. 1999).

24

     Plaintiffs have not cited legal authority for the proposition that a commercial lease with

25

the federal government is a species of property protected by the Fifth Amendment.  Even if that

26

27

premise is accepted, it does not follow that plaintiffs' lease precludes the base commander from

28

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

exercising her discretion to control access to the facility in the interest of maintaining order and discipline.  The Ninth Circuit has rejected the argument that "a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power in a commercial contract."  Western Energy Company v. United States Department of Interior, 932 F.2d 807 (9th Cir. 1991), quoting Bowen v. Public Agencies Opposed to Social Security Entrapment, 477 U.S. 41 (1986).

Plaintiffs' property interest in his lease does not supercede the Commander's responsibility and authority for maintaining good order and discipline on the installation under her command.  "[T]he interest of the base commander in maintaining control over the entry of persons to [the base at issue] is substantial; indeed, there is a strong tradition of treating that interest as being in a specially protectable class by itself" Id. (citing generally Cafeteria Workers, 367 U.S. at 891-92).  The Court went on to state that "[t]he commander has 'authority to maintain discipline and order on the base and to ensure its smooth operation'" Id. (quoting Tokar v. Hearne, 699 F.2d 753, 756 (5th Cir.), cert. denied, 464 U.S. 844, 78 L. Ed. 2d 137, 104 S. Ct. 146 (1983)).

Opening the installation to civilians does not divest the Commander of this authority.  The Ninth Circuit in Albertini stated that "[e]ven during an open house, an important security interest remains in controlling the access of persons thought to present special problems or dangers." Id. (citing Albertini, 105 S. Ct. at 2907).  The Court concluded that "[w]eighing these interests as the Supreme Court did in Cafeteria Workers, we conclude that the commander of Hickam Air Force Base, in the exercise of his unique control over the facility with which he was entrusted, was not required by due process to hold or give an opportunity for a hearing at the

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

time he issued the bar letter to Albertini." Id.

Plaintiffs do not possess a constitutional right to access to a military base.  Garrison v. U.S., 688 F. Supp. 1469 (D. Nev.1988).  In Garrison, the court stated "there is no constitutionally protected interest in access to a military base" and that "allegations of unconstitutional deprivation of liberty and property interests fail to state a claim upon which relief can be based." Id. at 19.

Even where constitutional rights are involved, a military commander may remove a civilian from an installation for behavior that is disruptive but not criminal.  The Ninth Circuit has:

> . . . recently upheld a commanding officer's right "to exclude, even peaceful speech and assembly which interferes in any way with the functioning of (a military base)," by use of a bar letter similar to that used here. United States v. Douglass,, 9 Cir., 1978, 579 F.2d 545, 549. The conduct involved in that case was disruptive, but noncriminal, as was the conduct involved here.

U.S. v. May, 622 F.2d 1000, 1006 (9th Cir. 1980).

### 3. COLONEL MARTIS' DECISION WAS NOT ARBITRARY OR DISCRIMINATORY.

A Commander's decision to bar an individual from a military installation "will be disturbed only upon showing that grounds for exclusion were patently arbitrary or discriminatory" Id. (discussing Cafeteria & Restaurant Workers, 367 U.S. 886).  Regardless of whether the Court reviews the stated, facial rationale for the barment, or look to the facts supporting them, Colonel Martis' decision was reasonable.  Not only was her reasoning stated clearly in the barment letter, but it involved an important, recognized concern affecting order and discipline on her base.  It is not unreasonable to bar plaintiff from a military post because of an undisclosed felony (sex offense) conviction.  It is not discriminatory for a commanding officer to

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

be concerned with the security and well-being of her base, especially when the concerned

individual withheld information and disclosure of the conviction in order to obtain access to the

base. Plaintiffs have not demonstrated that the stated reasons for exclusion were pretextual, or

that defendant has allowed other similarly situated individuals (registered sex offenders who

actively concealed their criminal history on a lease application) to reside at the installation.

Plaintiffs allege that the government violated California Penal Code Section 290.46,

commonly known as the "Megan's Law" provisions of the penal code, by wrongful use of

information concerning the plaintiff's conviction posted on the public database. The short

answer to this argument is that the commander's authority is derived from the United States

Constitution, and supercedes conflicting state law under the Supremacy Clause, United States

Constitution Art. VI, Clause 2.

The longer answer is that Megan's Law does not provide absolute protection to plaintiff,

who may be denied housing to protect a person at risk or pursuant to some other provision of

law. As stated in an opinion by the California Attorney General, "Section 290.46 subdivision

(j), is unequivocal. A registered sex offender may be denied housing "to protect a person at risk"

or for some other reason that is authorized by a specific "provision of law." Opinion No. 05-

301, 89 Ops. Cal Atty. Gen. 85. Even under Megan's Law, the commander may deny housing to

a registered sex offender pursuant to her lawful authority to regulate access to the installation.

**C. Plaintiffs Have Not Demonstrated Irreparable Harm.**

Plaintiffs are not homeless. They are currently living in the home of Cheryl Adamski's

parents, who are on vacation. Although plaintiffs allege that they "may" not be allowed to stay

there, Declaration of Cheryl A. Adamaski at paragraph 10, there no evidence that they must

leave that home before this Court can hear their request for a preliminary injunction. And even

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

if they could make that showing, nothing prevents them from renting another house or

apartment.  Any loss suffered by the plaintiffs (e.g., the difference between their current rent and

the cost of finding alternative housing) would therefore be economic, and as such, is not, as a

matter of law and fact, irreparable.  See Samson v. Murry, 415 U.S. 61, 90 (1974).  "'The basis

of injunctive relief in the federal courts has always been irreparable harm and inadequacy of

legal remedies'" Id. at 88 (quoting Beacon Theatres v. Westover, 359 U.S. 500, 506-507 (1959)).

"'The possibility that adequate compensatory or other corrective relief will be available at a later

date . . . weighs heavily against a claim of irreparable harm'" Id. at 90 (quoting Virginia

Petroleum Jobbers Assn. v. FPC, 415 U.S. 61 (1974)).

    The plaintiffs allege that the bar "deprives him of his right to associate with his wife and

newborn child."  Not true.  The bar is clear and limited in its scope of barring the plaintiff from

the installation.  The plaintiff's right of association is limited only by his unwillingness to

relocate his family to a residence not located on the installation.  Alternatively, the plaintiff's

wife is free to reside on the installation until completion of the lease term, as she is also a

signatory to the lease.

    The Fourth Circuit addressed these concerns in Berry, stating:

> Finally, we reject the plaintiff's assertion that we must consider whether the bar
> order was reasonable in view of all the circumstances surrounding the order.
> Under this theory, plaintiffs would have us consider the consequences of the bar
> order on Berry's financial situation, living arrangements, and educational
> opportunities.  Under the standards of *Cafeteria Workers*, such review is
> foreclosed.  We need only determine whether the commander acted for valid,
> nonarbitrary reasons, and it is clear here that he did.

Berry, at 718.

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

The <u>Berry</u> court used this rationale to uphold a bar against a military dependent entitled to medical and educational benefits in addition to housing on the installation.   The bar upheld in <u>Berry</u> required a service-member's teenage daughter to move out of her family's home  The current case presents a plaintiff with far less significant interest in the installation.

**D.  The Balance of Harms Does Not Tip in Favor of the Plaintiffs.**

The smaller the probability of success on the merits demonstrated by the plaintiff, the greater the showing must be of irreparable harm.  <u>Preminger v. Principi</u>, 422 F.3d 815, 826 (9th Cir. 2005) (citing <u>A&M Records v. Napster, Inc.</u>, 239 F.3d 1004, 1013 (9th Cir. 2001)).  As stated above, the only harm potentially suffered by the plaintiff is economic, and the chances for success on the merits are very low.  The law overwhelmingly weighs against the success of the plaintiff. The damage suffered by hamstringing the authority of an installation commander to regulate who she or he allows upon the installation heavily outweighs any economic hardship.

**E.  The Public Interest Would Suffer if the Plaintiffs Prevail.**

The Ninth Circuit has addressed the public interest test saying that "[i]f the public interest is involved, the District Court must also determine whether the public interest favors the [plaintiff]."  <u>Westlands Water District v. Natural Res. Def. Council</u>, 43 F.3d 457, 459 (9th Cir. 1994).   "The public interest inquiry addresses [the] impact on non-parties rather than parties." <u>Preminger</u>, 422 F.3d at 826 (quoting <u>Sammartano v. First Judicial District Court</u>, 303 F.3d 959, 964 (9th Cir. 2002)).

Although a violation of a Constitutional right raises the issue of public interest, there is no constitutionally protected right to enter a military installation.  Additionally, the interest of a commander in maintaining good order and discipline and control over who is allowed access to

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW

the installation is compelling.  As noted above, the Ninth Circuit has held that "there is a strong tradition of treating that interest as being in a specially protectible class by itself" U.S. v. Albertini, 783 F.2d 1484, 1487 (9th Cir. 1986) (overruled, in part, on other grounds by U.S. v. Qualls, 172 F.3d 1136 (9th Cir. 1999)).  In light of the high public interest in permitting a commander to regulate an installation to ensure mission accomplishment and the lack of any cognizable right to enter the installation, injunctive relief is not warranted.

## IV.  CONCLUSION

The plaintiffs have failed to meet the elements for the test for injunctive relief.  The likelihood of success on the merits weighs heavily against the plaintiffs.  Compounding the plaintiffs' failure to show any chance of success is the failure to show anything beyond economic hardship, which does not meet the standard for the irreparable harm element.  In balancing the harm between the two parties, the plaintiffs have failed to show that the scale tips in their favor. The public interest in allowing a commander to control access to an installation outweighs the plaintiffs' non-existent right to enter an installation.  The government asks that plaintiffs' request for a temporary restraining order be denied.


 DATED: July 3 2007                          SCOTT N. SCHOOLS
                                             United States Attorney

                                             /S/ *James A. Scharf*
                                             _____

                                             JAMES A. SCHARF
                                             Assistant United States Attorney

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR TRO
Case No. 5:07-cv-03307-RMW