**DAVID W. BROWN, Calif. SBN 99389**
**Attorney at Law**
**665 Munras Ave., Suite 210**
**Monterey, CA 93940**
**Tel: (831) 649-8211**
**Fax: (831) 649-2376**
**Email: DavidWayneBrown@aol.com**

**Attorney for Plaintiffs**
**JASON J. ADAMSKI and**
**CHERYL A. ADAMSKI**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF THE STATE OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **JASON J. ADAMSKI,**<br>**CHERYL A. ADAMSKI,**<br><br>　　　　　　　　　Plaintiffs,<br><br>-vs-<br><br>**PAMELA A. MARTIS, in her capacity**<br>**as garrison commander, Presidio of**<br>**Monterey, United States Army,**<br><br>　　　　　　　　　Defendant. | No. C-07-03307-RMW<br><br>**PLAINTIFFS' REPLY BRIEF**<br>**IN SUPPORT OF ISSUANCE**<br>**OF OSC AND TRO**<br><br>Date: July 6, 2007<br>Time: 9:00 AM<br>Courtroom 6<br>Hon. Ronald M. Whyte |

**I. THE CASES RELIED ON BY DEFENDANT DO NOT APPLY TO THE FACT SITUATION IN THIS CASE, AND PLAINTIFFS HAVE SHOWN A STRONG PROBABILITY OF SUCCESS ON THE MERITS.**

　　　In this case, defendant argues that where the Army owns a housing enclave, operated by a private entity, whose streets are open to the community, and in which housing is even rented to civilians having no military connection, a commanding officer may summarily evict a civilian lessee, in the absence of any showing of any present misconduct, by use of a bar letter.

　　　In support of this proposition, defendant relies primarily on three cases, *United States v. Albertini*, 472 U.S. 675 (1985), *Cafeteria and Restaurant Workers Union v. McElroy*,

**367 U.S. 886 (1961), and *Berry v. Bean*, 796 F.2d 713 (4th Cir. 1986). Before analyzing these, plaintiffs ask the Court to consider counsel's declaration in reply, which includes the following facts about just what type of military facility plaintiffs reside on.**

**Though this case is framed by a "bar letter" issued by a military commander of a military base, namely the Presidio of Monterey which includes the closed-base Defense Language Institute (DLI), the area on which plaintiffs' home is located, Ord Military Community (OMC), is *not* a military base in the true sense of the word. It is not adjacent or contiguous to the closed DLI base, or even near it, nor to the nearby closed Naval Postgraduate School (NPS). It is, simply put, a residential community which is, for now, open to civilians who have no military connection, and operated by a civilian entity. It consists of single-family homes – not barracks -- a fire station, churches, a police station manned by *civilian* federal police rather than military police, a Burger King, a gas station, and a commissary, and it has no visible boundaries, gates, fences, or guards around it. No military training occurs there. There are no headquarters there, for defendant's headquarters are located at nearby closed-base DLI. Indeed, to the extent OMC is a "base," it is the most open "bases" anywhere, certainly in Monterey County, as opposed to closed NPS and DLI, and the closed Coast Guard station, all in Monterey. (OMC, on the other hand, is in Seaside.) A major thoroughfare to the new university on the former Fort Ord, California State University Monterey Bay (CSUMB) runs right through OMC.**

**Defendant cites *Albertini* to imply the Supreme Court in that case limited the reach of *Flowers*. Perhaps so, but *Albertini* did not limit *Flowers* in a way relevant to the facts of *this* case. Mr. Albertini was a person who had, in 1971, entered a closed Air Force base, Hickam AFB in Hawaii, and poured blood on documents, for which he was justly barred from the base. He reentered the base nine years later during an open house on Armed Forces Day. The Supreme Court, though reversing the Ninth Circuit's decision, and thus reinstating the section-1382 trespass conviction, distinguished *Flowers* as follows:**

**In holding that §§ 1382 cannot be applied during an open house, the Court of Appeals misapprehended the significance of *Flower* [sic]. As this Court later observed in Greer, the decision in *Flower* [sic] must be viewed as an application of established First Amendment doctrine concerning expressive activity that takes place in a municipality's open streets, sidewalks, and parks. 424 U.S., at 835-836. *Flower* [sic] did not adopt any novel First Amendment principles relating to military bases, but instead concluded that the area in question was appropriately considered a public street. There is "no generalized constitutional right to make political speeches or distribute leaflets," *id*., at 838, on military bases, even if they are generally open to the public. *Id*., at 830, 838, and n. 10. *Greer* clarified that the significance of the per curiam opinion in *Flower* [sic] is limited by the unusual facts underlying the earlier decision. 424 U.S., at 837. [*Albertini, supra*, at pp. 484-5]**

The Court went on to note that these unusual facts in *Flowers* were as follows:

**No sentry was posted anywhere along the street, which was open to unrestricted civilian traffic 24 hours a day. *Id.*, at 198. The Court determined that New Braunfels Avenue was a public thoroughfare no different than other streets in the city, and that the military had abandoned not only the right to exclude civilian traffic from the avenue, but also any right to exclude leafleteers. *Greer v. Spock, supra*, at 835. The defendant in *Flower* [sic] received a bar letter because he participated in an attempt to distribute unauthorized publications on the open military base. 407 U.S., at 197; *United States v. Flower*, 452 F.2d 80, 82, 87 (CA5 1971). This was the very activity that *Flower* [sic] held protected by the First Amendment. [Ibid.]**

In brief, *Flowers* involved portions of an open military base open to civilian use, where the government had abandoned the right to restrict civilian traffic and protest, on streets and sidewalks, which is the very situation presented here, whereas *Albertini* involved a closed military base open to public visitation for a single day. While that may seem a narrow distinction, the Supreme Court in *Albertini* did not overrule its prior decision in *Flowers*.

In the instant case, plaintiffs' interests are more substantial than were those of the military-base protesters in *Flowers* and its progeny. Although in *Flowers*, a military base open to the public was involved, the interest of the protester was a transitory one at best, namely occasional exercise of the right of protest for a brief period of time. Here, the base is just as open, if not more so, in that parts are rented to civilians like plaintiffs, plus,

3

plaintiffs have a property interest, namely a one-year leasehold granted them, by a civilian entity managing the housing, and on a housing enclave that is open to civilians in a very real sense. It is a lease under which they are obligated to pay rent whether defendant bars plaintiffs from it, and which forbids them to abandon the property. The Fifth Amendment right to due process is involved here, rather than the First Amendment, but the Government cites no authority to the effect that the Fifth Amendment is a poor cousin of the First, unworthy of protection in a fact situation that is even more compelling than in *Flowers*.

In *Cafeteria and Restaurant Workers Union v. McElroy*, the military base was unlike that in *Flowers*. It was not open in any sense of the word, and the Court there had no opportunity to consider a situation anything like that in Flowers. This was a secure, guarded facility called the Naval Gun Factory, with guards posted all about, which handled highly classified materials. Civilians did not live there, no portions were open to the public, and security clearances were required of all. There certainly wasn't a public thoroughfare through which unrestricted traffic ran 24 hours a day. The fact situation presented in that case is diametrically opposed to that in the present case.

*Berry v. Bean* did uphold the use of a bar letter to exclude a civilian military dependent from base, including military housing. However, the bar letter was issued due to that dependent having committed a drug-related offense *on the base*, a type of conduct, the court noted, that even the dissenters in *Albertini* said constituted proper grounds for issuance of a bar letter. Furthermore, the particular bar letter actually gave some semblance of due process by inviting the individual to submit "any compelling reason which you believe would be sufficient to justify a modification or termination" of the terms of the bar, which opportunity was ignored. And, again, no part of the base was open to civilians for rental housing, other than as military dependents.

For the foregoing reasons, and the reasons stated in plaintiffs' initial brief, plaintiffs have shown a probability of succeeding on the merits.

**II. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM, AND THE BALANCE OF HARMS, AS WELL AS THE PUBLIC-INTEREST PRONG, FAVORS THEM.**

Plaintiffs do not contest the standards cited by defendant in her brief (at 3:25-27) for issuance of a preliminary injunction. However, plaintiffs have shown a probability of success on the merits, in their opening brief and above. They have also made a showing of irreparable harm. Defendant asserts that plaintiffs are not suffering harm because, after all, they found a temporary place to stay after having been summarily evicted, namely with Mrs. ADAMSKI's parents. (Does this mean plaintiffs must be sleeping in the street in order to qualify as suffering hardship? No doubt if they were staying in a homeless shelter, defendant would claim they suffer no hardship either, since they have a temporary place to stay.) The harm, however, is that plaintiffs are forced to stay in temporary housing, while paying rent for other premises they rented under a one-year lease, but which they cannot occupy. The lease not only requires plaintiffs to continue paying their rent, but has a clause forbidding abandonment. Defendant states plaintiffs could rent another apartment. Should they do this while paying the rent they are required to pay under their current lease, so that they pay rent on two properties? They have a lease. They are not permitted, under the lease, to abandon and just stop paying rent. And it is no decent answer, to a proceeding which questions the legality of a summary eviction, to say that the tenants could move elsewhere. Defendant cites *Berry v. Bean, supra*, to answer the assertion that the bar letter would allow Mrs. ADAMSKI to continue to live there, but the family would be split up. However, in that case, Ms. Berry committed a drug offence <u>*on post*</u>, whereas, no one asserts that Mr. ADAMSKI has committed any sexual offense on base, or has harassed anyone or committed illegal behavior on base, or anywhere or at any time other than in Ohio in 1999. For that reason, the balance of harm favors him. As for plaintiffs' failing to report the conviction, plaintiffs' declarations already have stated that they believed, in good faith, that they were not required to disclose convictions more than seven years old.

As far as advancement of the public interest, plaintiffs have already noted that

5

**California law, namely Penal Code section 290.46, forbids improper use of sex offender data to deprive a person of housing. The Military Housing Initiative Privatization Act of 2003, cited in plaintiffs' opening brief, provides for the renting of military housing to civilians, as was done here, by a private entity arguably subject to California state laws even if defendant may not be. And, to construe that statute as making an exception for protecting a "person at risk" in the absence of any showing of actual risk or present misconduct or the suspicion of such, would gut it of any and all meaning.**

### Conclusion

For the foregoing reasons, the Court should issue a temporary restraining order and order to show cause why a preliminary injunction should not be granted.

**DATED: July 4, 2007**

                                            **Respectfully submitted,**

                                            _____

                                            **DAVID W. BROWN**
                                            **Attorney for Plaintiff**
                                            **JASON and CHERYL ADAMSKI**