1

2

3                                                                    **E-FILED:** ___7/9/07___

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

                              SAN JOSE DIVISION

10

**United States District Court**
**For the Northern District of California**

11   JASON J. ADAMSKI, CHERYL A.                No. C-07-03307 RMW
     ADAMSKI,

12                                              ORDER DENYING APPLICATION FOR
                    Plaintiffs,                 TEMPORARY RESTRAINING ORDER AND
                                                SETTING BRIEFING SCHEDULE AND
13          v.                                  HEARING DATE FOR PRELIMINARY
                                                INJUNCTION
14   PAMELA A. MARTIS, in her capacity as
     garrison commander, Presidio of Monterey,
15   United States Army,

16                  Defendant.

17

18          Plaintiffs Jason and Cheryl Adamski request that this court grant a temporary restraining

19   order preventing the enforcement of a bar letter issued by defendant Pamela Martis that bars plaintiff

20   Jason Adamski from entering the Presidio of Monterey Base Complex, which includes the area

21   where plaintiffs' home is located.  The parties stipulated to a briefing schedule with a hearing on

22   plaintiffs' motion for temporary restraining order set for July 6, 2007.  Defendant Pamela Martis

23   opposes the motion.  The court has read the moving and responding papers and considered the

24   argument of counsel.  For the reasons set forth below, the court DENIES plaintiffs' motion for a

25   temporary restraining order.

26                              **I.  BACKGROUND**

27          On March 1, 2007 plaintiffs, who are husband and wife, entered into a one-year lease for a

28
ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT

**United States District Court**
For the Northern District of California

1  single family home within the boundaries of the Presidio of Monterey Annex and the Ord Military

2  Community. Compl. ¶ 5. Upon signing the lease, plaintiffs moved into and occupied the leased

3  property as their residence. *Id.* This housing community is primarily intended for members of the

4  military, but is also open to civilian residents. *Id.* Plaintiffs are both civilian residents of the

5  community. *Id.* ¶ 3. The housing community and parts of the surrounding areas were formerly the

6  Fort Ord Army Base. *Id.* ¶ 6. Portions of the former base have been conveyed to surrounding

7  municipalities or other entities. *Id.* However, the housing community in which plaintiffs reside,

8  although not physically barricaded from the surrounding areas, remains under Army command. *Id.*

9  According to plaintiffs, the areas under Army command are policed by civilian federal police

10  officers, not by military police. *Id.* The Parks at Monterey Bay, the entity leasing the property, is a

11  partnership among Clark Realty, Pinnacle Realty, the United States Army, and the United States

12  Navy pursuant to the Military Housing Privatization Act of 1996. *Id.* ¶ 5.

13     Plaintiff Jason Adamski was convicted in 1999 of "attempted gross sexual imposition" on a

14  minor in the state of Ohio. *Id.* ¶ 7. Based on that conviction, he is required to register as a sex

15  offender under California law. *Id.* He avers that he has complied with the registration requirements.

16  However, when completing the lease application and lease agreement with The Parks at Monterey

17  Bay, plaintiffs did not disclose Mr. Adamski's prior conviction or that he is required to register as a

18  sex offender under local laws. *Id.* In late April or early May 2007 another resident discovered that

19  Mr. Adamski is a registered sex offender and reported that fact to the landlord. The landlord

20  provided written notice to the residents of the community without identifying Mr. Adamski and

21  warned residents to avoid harassment of Mr. Adamski. *Id.*; Ex. A.

22     In their lease application, plaintiffs were asked the question "Have you or your secondary

23  applicant ever been convicted of a crime? If yes, list state." Plaintiffs answered the question in the

24  negative and both signed the application. In their declarations in support of their motion for

25  temporary restraining order, both plaintiffs state that they believed, in good faith, that they need not

26  have disclosed a conviction that is over seven years old in response to the question in the

27  application.     Defendant Martis is a colonel on active duty in the United States Army and serves as

28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                                  2

**United States District Court**
For the Northern District of California

1  garrison commander of the Presidio of Monterey, including the Presidio of Monterey Annex and the

2  Ord Military Community. *Id.* ¶ 4. On May 21, 2007 Martis, acting in her capacity as garrison

3  commander, sent a letter to Mr. Adamski stating, *inter alia*:

4      [E]ffective June 21, 2007, you are barred from the Presidio of Monterey Base
       Complex, which consists of the Presidio of Monterey and the Ord Military
5      Community. Thereafter, you will not reenter or be found within the limits of the
       Presidio of Monterey Base Complex at any time unless federal judicial authorities
6      or law enforcement personnel request your presence.

7      ***

8      This action is being taken because your residence in a military housing community
       as a registered sex offender affects the good order and discipline of the military
9      community, which I am responsible for maintaining. You failed to indicate on your
       rental application that you had been previously convicted of a felony sex offense, and
10     your presence is affecting the well-being of other residents in the military housing
       community.

11 *Id.* at Ex. B. Plaintiffs aver that Martis's "bar letter" has effectively evicted Mr. Adamski from his

12 home and deprived him of the benefits of his one-year lease under threat of arrest and federal

13 criminal prosecution for trespass pursuant to 18 U.S.C. § 1382. *Id.* ¶ 7.

14     Plaintiffs complain that defendant's actions have deprived Mr. Adamski of his property

15 interest in a leasehold to his home and his right to associate with his wife and newborn daughter

16 while they continue to live in the leased property without due process and without compensation in

17 violation of the Fifth Amendment of the United States Constitution. Similarly, plaintiff Cheryl

18 Adamski has been deprived of her right to associate with her husband. Thus, plaintiffs seek

19 declaratory relief that defendant's directive violated their Fifth Amendment rights and injunctive

20 relief restraining defendant from enforcing the directive in the May 21, 2007 letter. *Id.* ¶¶ 8-13.

21 Plaintiffs also claim they are entitled to injunctive relief, reasonable attorney's fees, and damages or

22 civil penalty pursuant to Cal. Penal Code § 290.46(l) based on defendant's alleged misuse of the

23 information derived from the Megan's Law database. *Id.* ¶¶ 15-16.

## II. ANALYSIS

25     Plaintiffs seek immediate injunctive relief on the basis that they will suffer irreparable harm

26 and injury if Mr. Adamski is barred from his residence without due process. Although plaintiffs also

27

28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                                      3

1  appear to seek a preliminary injunction,[1] given the limited time the parties had for briefing the

2  issues, the court will consider the motion only as one for temporary injunctive relief.

3        **A.    Legal Standard**

4        Under Fed. R. Civ. P. 65(b), plaintiffs must make a showing that immediate and irreparable

5  injury, loss or damage will result to plaintiff if the order is not issued to support their motion for a

6  temporary restraining order.  Temporary restraining orders are governed by the same standard

7  applicable to preliminary injunctions.  *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs.,*

8  *Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary

9  injunction is the same as the standard for issuing a temporary restraining order.").

10       The Ninth Circuit has set forth two separate sets of criteria for determining whether to grant

11  preliminary injunctive relief:

12       Under the traditional test, a plaintiff must show: (1) a strong likelihood of success
         on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief
13       is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement
         of the public interest (in certain cases).  The alternative test requires that a plaintiff
14       demonstrate either a combination of probable success on the merits and the
         possibility of irreparable injury or that serious questions are raised and the balance
15       of hardships tips sharply in his favor.

16  *Taylor v. Westly*, ___ F.3d ___, 2007 WL 1557611, *2 (9th Cir. May 31, 2007) (certified for

17  publication).  "These two formulations represent two points on a sliding scale in which the required

18  degree of irreparable harm increases as the probability of success decreases."  *Id.*  "They are not

19  separate tests but rather outer reaches of a single continuum."  *Id.*

20       **B.    Likelihood of Success on the Merits**

21       Defendant first argues that plaintiffs' motion for temporary restraining order must be denied

22  because, as a matter of law, plaintiffs cannot prevail on the merits.  It is well-settled that a

23  commanding officer has the power to exclude civilians from the area of her command.  *Cafeteria*

24  *and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 893 (1961), *overruled on other grounds*

25  *by Bd. of Regents v. Roth*, 408 U.S. 564 (1972).  However, "[a]lthough a commanding officer has

26

27       [1]    In addition to their application for a temporary restraining order, plaintiffs also submitted
         an application for issuance of an order to show cause regarding preliminary injunction.
28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                                    4

1  broad discretion to exclude civilians from a military base, this power cannot be exercised in a

2  manner that is patently arbitrary or discriminatory." *United States v. Albertini*, 472 U.S. 675, 690

3  (1985) ("*Albertini I*") (citing *Cafeteria and Restaurant Workers Union*, 367 U.S. at 898).  Thus,

4  whether plaintiffs are likely to prevail on the merits of their claims turns on whether defendant's

5  exercise of power to issue the bar letter was valid.

6      Plaintiffs argue that no case law addresses a civilian's Fifth Amendment right to not be

7  excluded without due process in a military enclave.  Therefore, plaintiffs submit, this court should

8  apply by analogy case law regarding First Amendment rights within military enclaves.  Specifically,

9  plaintiffs point to *Flowers v. United States*, 407 U.S. 197 (1972), for the proposition that base

10  commanders may not enforce letters violating the constitutional rights of civilians on portions of

11  military bases or enclaves which are open to the public.

12      However, the Supreme Court has expressly clarified that the standards set forth in *Flowers*

13  are applicable to First Amendment rights and are not relevant for the purposes of determining the

14  validity of a commanding officer's bar letter.  *See Greer v. Spock*, 424 U.S. 828, 838 (1976) ("The

15  notion that federal military reservations, like municipal streets and parks, have traditionally served

16  as a place for free public assembly and communication of thoughts by private citizens is . . .

17  historically and constitutionally false.");  *Albertini I*, 472 U.S. at 685-87.  In *Albertini I*, a

18  commanding officer had issued a bar letter against Albertini for having previously vandalized

19  government property on the military base.  *Id.* at 677-78.  The Supreme Court rejected Albertini's

20  claim that *Flowers* rendered the bar letter invalid:

21      *Flower[s]* establishes that where a portion of a military base constitutes a public
        forum because the military has abandoned any right to exclude[]civilian traffic and
22      any claim of special interest in regulating expression, a person may not be excluded
        from that area on the basis of activity that is itself protected by the First Amendment.
23      Properly construed, *Flower[s]* is simply inapplicable to this case.  There is no
        suggestion that respondent's acts of vandalism in 1972, which resulted in the
24      issuance of the bar letter, were activities protected by the First Amendment.

25  *Id.* at 685-86 (citing *Greer v. Spock*, 424 U.S. at 836-38).  Albertini had entered the base during an

26  open house in which the military had openly invited the public.  The Court held that the claimed

27  indicia of the open nature of the military base did not render the commanding authorities powerless

28

**United States District Court**
For the Northern District of California

1    to exclude certain civilians via bar letters:

2       We do not agree that the historically unquestioned power of a commanding officer
        to exclude civilians from the area of his command should be analyzed in the same
3       manner as government regulation of a traditional public forum simply because an
        open house was held at Hickam. The fact that respondent had previously received
4       a valid bar letter distinguished him from the general public and provided a
        reasonable grounds for excluding him from the base. That justification did not
5       become less weighty when other persons were allowed to enter. . . . Where a bar
        letter is issued on valid grounds, a person may not claim immunity from its
6       prohibition on entry merely because the military has temporarily opened a military
        facility to the public.

7    *Id.* at 687. Rather, the Court held, the issue is whether Albertini could show that the bar letter "is

8    inconsistent with any statutory or regulatory limits on the power of military officials to exclude

9    civilians from military bases." *Id.* at 690.

10       Plaintiffs argue that defendant improperly issued the bar letter without due process. Both the

11   Supreme Court and Ninth Circuit have addressed the issue of due process rights on military

12   reservations. In *Greer*, the Supreme Court held, "[a] necessary concomitant of the basic function of

13   a military installation has been the historically unquestioned power of its commanding officer

14   *summarily* to exclude civilians from the area of his command. *Greer*, 424 U.S. at 838 (emphasis

15   added) (citation, internal quotations, and internal edit omitted); *see also Berry v. Bean*, 796 F.2d

16   713, 717 n.3 (4th Cir. 1986) ("We note, however, the First Circuit's conclusion that 'the power to

17   exclude civilians summarily has been acknowledged by almost every court to consider the matter.'")

18   (quoting *Serrano Medina v. United States*, 709 F.2d 104, 109 (1st Cir. 1983)) (additional citation

19   omitted). In *Cafeteria and Restaurant Workers Union*, 367 U.S. at 895, the Supreme Court held that

20   a restaurant worker at a restricted-access military facility could be excluded from the site without a

21   hearing. Whether there is any due process right to a hearing "is to be determined flexibly in light of

22   the nature of the government function involved and of the private interest affected." *United States v.*

23   *Albertini*, 783 F.2d 1484, 1486 (9th Cir. 1986) ("*Albertini II*") (citing *Cafeteria and Restaurant*

24   *Workers Union*, 367 U.S. at 895).

25       In *Albertini II*, the appellant appealed his conviction of illegal entry into a military base in

26   contravention of a bar letter. In addressing the appellant's argument that due process requires the

27   commander to afford him a hearing at or before the time the bar letter is issued, the Ninth Circuit

28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                                           6

1  held that "Albertini's argument is effectively foreclosed by *Cafeteria and Restaurant Workers Union*

2  *v. McElroy*." 783 F.2d at 1487.  The court first acknowledged that "[t]he commander has authority

3  to maintain discipline and order on the base and to ensure its smooth operation." *Id.* (citation and

4  internal quotation marks omitted).  The court found that although Albertini had "some form of

5  liberty interest in access to Hickam Air Force Base," "the interest of the base commander in

6  maintaining control over the entry of persons to Hickam Air Force Base is substantial; indeed, there

7  is a strong tradition of treating that interest as being in a specially protectible class by itself." *Id.*

8  (citation omitted).  The court reasoned that "[e]ven during an open house, an important security

9  interest remains in controlling the access of persons thought to present special problems or dangers."

10 *Id.* at 1486. In conclusion the court found that the balance of interests supported that "the

11 commander of Hickam Air Force Base, in the exercise of his unique control over the facility with

12 which he was entrusted, was not required by due process to hold or give an opportunity for a hearing

13 at the time he issued the bar letter to Albertini." *Id.*

14      Here, plaintiffs have asserted that Mr. Adamski's interest in access to the Presidio of

15 Monterey premises is that of a lessee's leasehold interest in real property.  Such an interest is

16 somewhat stronger than the interests at issue in *Albertini I & II* (interest as an invitee to open house

17 at military reservation) and *Cafeteria and Restaurant Workers Union* (restaurant worker's interest in

18 access to her place of employment).  However, plaintiffs cite no cases that provide that a property

19 interest outweighs the "substantial" interest of a base commander in maintaining control over who

20 may enter a military reservation.  Moreover, here, plaintiffs do not dispute that the leasehold

21 property was obtained by answering a "qualifying question" on the lease application falsely.

22 Although plaintiffs contend that they in good faith believed that they did not have to disclose a 1999

23 conviction because it was over seven years old, the question as stated on the application inquired

24 whether the applicants had *ever* been convicted of a crime.

25      In addition, plaintiffs have not demonstrated that defendant acted capriciously or arbitrarily

26 in issuing the bar letter.  As noted, one of the qualifying questions for the lease application for the

27 housing community was whether the applicants had ever been convicted of a crime.  Although

28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                                  7

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  defendant bars Mr. Adamski based on his status as a sex offender, plaintiffs have not shown that

2  such a bar is "inconsistent with any statutory or regulatory limits on the power of military officials to

3  exclude civilians from military bases." *See Albertini I*, 472 U.S. at 690.  Further, defendant noted in

4  the bar letter that Mr. Adamski actively concealed his previous conviction in the lease application

5  and that other residents in the housing community have expressed concern.  Finally, although

6  plaintiffs contend that no one has asserted that Mr. Adamski has committed any illegal acts within

7  the base, harassed anyone on the base, or committed any sexual offense on the base, it is not within

8  the purview of this court to question a commanding officer's decision to issue a bar letter that is not

9  otherwise capricious or arbitrary.  *See Chappell v. Wallace*, 462 U.S. 296, 305 (1983) ("courts are

10  ill-equipped to determine the impact upon discipline that any particular intrusion upon military

11  authority might have").

12  **C.    Possibility of Irreparable Injury**

13  Even if this court were to find that Mr. Adamski's interest in access to the leased property

14  outweighs defendant's interest in maintaining order and control within the military reservation, it

15  does not appear that plaintiffs have asserted that irreparable harm will occur if a temporary

16  restraining order is not issued.  Plaintiffs contend that they will be harmed because they have a one-

17  year lease term on the property and may not sublease without permission from the landlord.

18  However, as defendant contends, this harm is economic and does not constitute irreparable harm.

19  Alternatively, plaintiffs claim they will be harmed because the letter forces Mr. Adamski to be apart

20  from his family.  However, the bar letter bars Mr. Adamski from the property within the Presidio of

21  Monterey Base, not from associating with his family.

22  **D.    Conclusion**

23  Because plaintiffs have not demonstrated a strong likelihood of success on the merits and

24  have not demonstrated they will suffer irreparable harm absent a temporary restraining order, the

25  court does not find that issuance of a temporary restraining order is warranted.

26  **III. ORDER**

27  For the foregoing reasons, the court DENIES plaintiff's motion for temporary restraining

28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                                                                                      8

1    order.  As agreed to by the parties at the July 6, 2007 hearing, a preliminary injunction hearing shall

2    be set for Tuesday, July 31, 2007, at 2:00 p.m.  The parties' briefs are due as follows:

3        Motion for preliminary injunction:        July 16, 2007, 5:00 p.m.

4        Opposition:                                July 23, 2007, 5:00 p.m.

5        Reply:                                     July 27, 2007, 5:00 p.m.

6

7    DATED:    7/6/07                          _Ronald M Whyte_____

8                                             RONALD M. WHYTE
                                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                              9

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

David W. Brown                    davidwaynebrown@aol.com

**Counsel for Defendant:**

James A. Scharf                   james.scharf@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** _____7/9/07_____                    _____SPT_____
                                        **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND HEARING DATE FOR PRELIMINARY INJUNCTION—C-07-03307 RMW
SPT                                        10